UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAWSON SHARPE,

                              Plaintiff,

                                                    9:05-CV-1003
v.                                                  (GTS/GHL)

JUSTIN TAYLOR, et al.,

                              Defendants.
_____

APPEARANCES:                                OF COUNSEL:

DAWSON SHARPE, 86-A-9994
Plaintiff *pro se*
Cape Vincent Correctional Facility
Rte. 12E
Cape Vincent, NY 13618

HON. ANDREW M. CUOMO                         HEATHER R. RUBINSTEIN, ESQ.
Attorney General for the State of New York
Counsel for Defendants
615 Erie Boulevard West, Suite 102
Syracuse, NY 13204

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

        This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Glenn T. Suddaby,

United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff

Dawson Sharpe alleges that employees of the New York State Department of Correctional

Services ("DOCS") violated his civil rights by repeatedly washing dirty mop heads with his

clothing, physically attacking him, depriving him of medications, issuing false misbehavior

reports, and threatening to harm him if he filed any grievances.  (Dkt. No. 35.)  Currently

pending before the Court is Defendants' motion for summary judgment pursuant to Federal Rule

of Civil Procedure 56.  (Dkt. No. 68.)  For the reasons that follow, I recommend that Defendants'

motion be treated solely as a motion for judgment on the pleadings, granted in part, and denied in

part without prejudice to the later filing of a subsequent motion for summary judgment supported

by a proper Statement of Material Facts and admissible evidence[1].

## I.   BACKGROUND

### A.   Summary of Plaintiff's Complaint

The operative complaint (Dkt. No. 35) alleges that:

Defendant Coco, a correctional officer at Gouverneur Correctional Facility, "ordered that

dirty mop heads be washed and dr[ied] in the same washing machine used for [Plaintiff's]

towels, sheets, pillow cases, underwear, and clothing" from 2002 to 2004.  (Dkt. No. 35 at ¶ 9.)

On September 20, 2004, Plaintiff's primary care physician referred him to a dermatologist

for treatment of a severe rash.  (Dkt. No. 35 at ¶ 4.)  The complaint refers to this rash as

"htperplastic micropoapular rash of the trunk."  *Id.*

On October 7, 2004, Plaintiff saw a dermatologist, who opined that the rash was caused

by cleaning materials and the fact that Plaintiff's skin had come "in contact with pernicious

chemicals."  (Dkt. No. 35 at ¶ 5.)  After this consultation, Plaintiff's primary care physician

referred him for a biopsy on the rash.  (Dkt. No. 35 at ¶ 6.)

---

[1]      Because this case has been pending for 3.5 years, I am reluctant to recommend
allowing Defendants the opportunity to move again for summary judgment.
However, the possibility that some claims could be disposed of without the need
for expending the court and community resources required for a trial suggests that
denying portions of the motion without prejudice is the most efficient resolution.

On October 19, 2004, Defendant Coco "address[ed] [Plaintiff's] grievance/complaint" by transferring Plaintiff to "another dormitory ... without a misbehavior report[2]."  (Dkt. No. 35 at ¶ 10.)

The biopsy on Plaintiff's rash was performed on October 21, 2004.  (Dkt. No. 35 at ¶ 7.)  As a result of the biopsy, Plaintiff was diagnosed with "ngiotic dermatitis, subacute type."  (Dkt. No. 35 at ¶ 8.)

On November 6, 2004, Defendant Plowman physically assaulted Plaintiff "in retaliation for the above grievance."  (Dkt. No. 35 at ¶ 14.)  Plaintiff alleges that his "serious back problem was further infuriated" by this attack.  (Dkt. No. 35 at ¶ 41.)

On November 9, 2004, Defendant Shareldon  physically assaulted Plaintiff "in retaliation for the above grievance."  (Dkt. No. 35 at ¶ 14.)  Plaintiff alleges that his "serious back problem was further infuriated" by this attack.  (Dkt. No. 35 at ¶ 41.)

On December 20, 2004, Plaintiff's primary care physician, after reviewing the results of Plaintiff's biopsy, directed a nurse to issue memoranda to all of the housing units at Gouverneur Correctional Facility advising that dirty mop heads should not be washed in the same machines as inmates' clothes. (Dkt. No. 35 at ¶ 15.)

Sometime before January 21, 2005, Defendant Justin Taylor, the superintendent of the facility, had the posted memoranda removed.  (Dkt. No. 35 at ¶¶ 16-17.)

---

[2]        To the extent that this allegation asserts a retaliation claim against Defendant Coco, I recommend that the Court dismiss the claim *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B).  Plaintiff has not pleaded facts plausibly suggesting that this transfer was an "adverse action."  *See Coleman v. Sutton,* 530 F. Supp. 2d 451, 453 (W.D.N.Y. 2008) (prisoner failed to state a retaliation claim where he did not allege that conditions into which he was transferred were more onerous than his original placement).  *Compare Shine v. Hofman*, 548 F. Supp. 2d 112 (D. Vt. 2008) (transfer from general population to "close custody").

On February 18, 2005, Defendant Sorell allowed porters to wash dirty mop heads in the inmate washing machine.  (Dkt. No. 35 at ¶ 18.)

On April 27, 2005, Defendant Sorell, "in retaliation," ordered Plaintiff to perform a work detail.  When Plaintiff told her he was medically excused, Defendant Sorell issued a false misbehavior report that resulted in Plaintiff being confined to the SHU and removed from the "RSAT" program.  (Dkt. No. 35 at ¶ 19.)  Plaintiff alleges that he suffered "prolong[ed] pain and suffering" after this incident[3].  (Dkt. No. 35 at ¶ 42.)

On May 3, 2005, Defendant Sorell falsely testified at a disciplinary hearing that she did not know that Plaintiff had a medical excuse.  (Dkt. No. 35 at ¶ 20.)

On August 25, 2005, Defendant Hunksy issued a false misbehavior report that resulted in Plaintiff being sent to the SHU.  (Dkt. No. 35 at ¶¶ 23-24.)  Plaintiff filed a grievance regarding this false misbehavior report.  (Dkt. No. 35 at ¶ 23.)

 On August 31, 2005, Defendant Theriault told Plaintiff "if you don't stop writing grievances on my officers, I will personally do you bodily harm."  (Dkt. No. 35 at ¶ 23.)

On August 31, 2005, Defendant Hunksy issued another false misbehavior report that resulted in Plaintiff being sent to the SHU.  (Dkt. No. 35 at ¶¶ 23-24.)

On August 31, 2005, Defendants Theriault and Shareldon physically assaulted Plaintiff while he was handcuffed.  (Dkt. No. 35 at ¶ 25.)

On September 3, 2005, Defendant Plowman removed Plaintiff's prescribed pain

---

[3]      To the extent that Plaintiff asserts an Eighth Amendment medical care claim arising out of this incident (Dkt. No. 35 at ¶ 42), I recommend that the Court dismiss it *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B).  The complaint alleges neither any "serious medical condition" nor facts plausibly suggesting that Defendant Sorell was deliberately indifferent to that condition.

medication from Plaintiff's personal property.  Plowman claimed that Plaintiff "was on the burn because of the grievances he had written in the facility."  Plaintiff did not receive his medication until two weeks later.  (Dkt. No. 35 at ¶¶ 26-27.)  Plaintiff does not allege that he suffered any injury as a result of not having his medication.

On January 23, 2006, Defendant Theriault told Plaintiff that his "officer will continue to target [Plaintiff] for the grievance [he] wrote because they are human beings."  (Dkt. No. 35 at ¶ 29.)

On January 28, 2006, and January 30, 2006, Defendant McDonald issued false misbehavior reports to Plaintiff "in retaliation" for Plaintiff "asserting [his] constitutional rights." (Dkt. No. 35 at ¶ 30.)

On April 25, 2006, Defendant Ball "saw Plaintiff on the walk way ..., called him a trouble maker, verbally harassed him, and threated[ed] to put him in the SHU because of the civil action [Plaintiff] had filed against his colleagues."  (Dkt. No. 35 at ¶ 31.)  On April 26, 2006, Defendant Ball fabricated a misbehavior report and placed Plaintiff in the SHU.  (Dkt. No. 35 at ¶ 32.)

On April 26, 2006, while Plaintiff was being processed into the SHU, Defendant Monnely sexually harassed Plaintiff, fondled Plaintiff's anus, and said "if you make any sudden moves I will thr[ow] you to the ground and stomp you out."  (Dkt. No. 35 at ¶ 33.)

Plaintiff alleges that all of the events described in the complaint are "retaliatory actions against the plaintiff to dehumanize him and discourage him from exercising his Constitutional Rights."  (Dkt. No. 35 at ¶ 35.)  Plaintiff alleges he suffered "extreme emotional distress" as a

result of "[t]he constant threats" to him[4].  (Dkt. No. 35 at ¶ 22.)

Plaintiff requests an injunction removing him from Gouverneur Correctional Facility.
(Dkt. No. 35 at ¶ 36.)  In addition, he requests $5 million in compensatory damages and $5
million in punitive damages.  (Dkt. No. 35 at ¶ 45.)

### B.    Summary of Grounds in Support of Defendants' Motion

Defendants argue that (1) Plaintiff's allegations that Defendants Theriault, Ball, and
Monnely threatened or verbally and/or sexually harassed him do not state a claim for retaliation;
(2) Plaintiff has not stated an Eighth Amendment conditions of confinement claim against
Defendants Coco and Sorell regarding the dirty mop heads or, in the alternative, that there is no
triable issue of material fact on this issue;  (3) Plaintiff's allegations that Defendants Sorell,
Hunsky, McDonald, and Ball issued false misbehavior reports to him do not state a claim for
retaliation or, in the alternative, that there is not triable issue of material fact on this issue; (4)
Plaintiff's allegations that Defendants Coco and Sorell washed dirty mop heads with his clothing
and that Defendant Plowman removed medication from his personal property do not state an
Eighth Amendment claim of inadequate medical care; (5) Plaintiff's complaint is too conclusory

---

[4]      Plaintiff's complaint also makes the following allegations about individuals not
named as defendants: (1) Officer Devito and a civilian cook fabricated a misbehavior report on
November 6, 2004, which resulted in Plaintiff being placed in the SHU (Dkt. No. 35 at ¶ 11); (2)
Lt. Don held a biased Tier II hearing on November 9, 2004, which resulted in Plaintiff being
placed in the SHU (Dkt. No. 35 at ¶ 12); (3) unnamed people "maliciously destroyed" Plaintiff's
typewriter in retaliation for filing a grievance (Dkt. No. 35 at ¶ 13); (4) unnamed sergeants who
were supposed to investigate incidents involving Plaintiff  "used intimidating tactic[s] to scare
some witnesses into not wanting to testify" for Plaintiff  (Dkt. No. 35 at ¶ 21); (5) an unnamed
sergeant instructed his subordinates to keep Plaintiff locked in a double-bunk cubicle (Dkt. No.
35 at ¶ 28); and (6) unnamed correctional officers called Plaintiff a troublemaker and a nigger.
(Dkt. No. 35 at ¶ 41.)

to state any claim;  (6) Plaintiff has failed to allege sufficient personal involvement by Defendant Taylor; (7) Plaintiff's excessive force claims should be dismissed; and (8) they are entitled to qualified immunity.  (Dkt. No. 68-5.)

### C.    Deficiencies in Defendants' Statement of Material Facts and Evidence

Defendants move for summary judgment.  As the moving parties, they bear the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists and they are entitled to judgment as a matter of law.  *Major League Baseball Properties, Inc. v. Salvino*, 542 F.3d 290, 309 (2d Cir. 2008).  Only after they have met this burden is Plaintiff required to produce evidence demonstrating that genuine issues of material fact exist.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  Federal Rule of Civil Procedure 56 and Local Rule 7.1(a)(3) provide the procedural guidelines for meeting this initial burden.

Local Rule 7.1(a)(3) requires parties moving for summary judgment to file and serve a Statement of Material Facts.  This statement "shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue."  Facts that are not in the Statement of Material Facts need not be considered.  *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 292 (2d Cir. 2000).  The rule thus puts the onus on the parties to marshal the evidence that supports the motion.  *Id*.  A district court has no duty, on a motion for summary judgment, to perform an independent review of the record to find proof of either a factual dispute or the lack of a factual dispute.  *See Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir.2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the

record to find proof of a factual dispute."); *accord, Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 371-72 (N.D.N.Y.2003) (Hurd, J.).  "Our District's requirements are not empty formalities. Rules such as L.R. 7.1(a)3 'serve to notify the parties of the factual support for their opponent's arguments, but more importantly inform the court of the evidence and arguments in an organized way-thus facilitating its judgment of the necessity for trial.'" *Jackson v. Broome County Correctional Facility,* 194 F.R.D. 436, 437 (N.D.N.Y.2000) (*citing Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir.1995)).

Defendants' Statement of Material Facts informs neither Plaintiff nor the Court of the evidence supporting Defendants' arguments.  It does not set forth each material fact about which Defendants claim there exists no genuine issue.  Rather, it is little more than a list of exhibits.  It states, in full:

1.   During all times relevant, the plaintiff Dawson Sharpe was a New York State inmate being housed at Gouverneur Correctional Facility (hereinafter "Gouverneur"). See Amended Complaint, Docket No. 35.

2.   Employees at Gouverneur responded to three (3) separate grievances filed by plaintiff regarding the allegation that mopheads were being improperly washed in the dorm washing machine. See Exhibit A annexed hereto.

3.   One (*sic*) June 19, 2007, plaintiff was deposed by Maria Moran, AAG in regard to the allegations in his complaint. Plaintiff's deposition transcript is annexed hereto as Exhibit B.

4.   On August 31, 2005, plaintiff was the subject of an inmate misbehavior report drafted by defendant Honsky. See Exhibit C annexed hereto.

5.   On January 28, 2006, plaintiff was the subject of an inmate misbehavior report drafted by defendant McDonald. See

8

Exhibit D annexed hereto.

6.      On January 30, 2006, plaintiff was the subject of a second
inmate misbehavior report drafted by defendant McDonald.
See Exhibit E annexed hereto.

(Dkt. No. 68-3.)  This Statement of Material Facts does not set forth any facts that are material to

the dispute at hand.   A fact is "material" only if it would have some effect on the outcome of the

suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  None of the issues in this

lawsuit hinge on where Plaintiff is housed, whether employees responded to Plaintiff's

complaints, the date of Plaintiff's deposition or the identity of the attorney who conducted it, or

the mere fact that Plaintiff was the subject of misbehavior reports.  Therefore, Defendants'

Statement of Material Facts does not comply with Local Rule 7.1(a)(3).

Local Rule 7.1(a)(3) clearly states that the "[f]ailure of the moving party to submit an

accurate and complete Statement of Material Facts shall result in a denial of the motion."

(Emphasis in original.)  This Court has denied motions for summary judgment based solely on

the deficiency of Statements of Material Facts nearly identical to the Statement filed here.  *See*

*e.g. Lynch v. Cook*, No. 02-CV-1526, 2006 WL 839 543 (N.D.N.Y. Mar. 29, 2006)(McAvoy, J.).

As noted above, in the absence of a proper Statement of Material Facts, this Court has no

duty to perform an independent review of the record to find proof of either a factual dispute or

the lack of a factual dispute.  *See Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d

Cir.2002).  And although Second Circuit precedent clearly states that district court must grant

special solicitude to  *pro se* civil rights plaintiffs, liberally construing their pleadings and loosely

applying procedural rules, I owe no such duty to Defendants, who are represented by counsel.

Even if I were inclined to go beyond the bounds of duty and perform an independent

review of the record to find proof of the lack of a factual dispute, I would be hampered by the fact that Defendants have not produced an iota of admissible evidence.  Motions for summary judgment must be supported by admissible evidence.  *Major League Baseball Properties, Inc. v. Salvino*, 542 F.3d 290, 309 (2d Cir. 2008).  "To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence."  Charles Alan Wright, et al., 10A *Fed. Practice & Procedure* 3d § 2722 (2005).  Here, none of the exhibits to the Statement of Material Facts is accompanied by *any* affidavit, much less an affidavit by a person through whom the exhibits could be admitted into evidence[5].

In light of Defendants' failure to file a proper Statement of Material Facts or any admissible evidence, I will treat their motion as an attack on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

### D.      Summary of Plaintiff's Response to Defendants' Arguments

Plaintiff's response to Defendants' motion essentially reiterates the allegations of the complaint.  (Dkt. No. 72.)  The only significant difference is that in his opposition to Defendants' motion, Plaintiff argues that Defendant Taylor is liable because of his response or lack of response to Plaintiff's grievances about the mop heads being washed with inmates' clothing.  Plaintiff has also provided affidavits from two other inmates who have been housed at Gouverneur Correctional Facility.  (Dkt. Nos. 70 and 71.)  These inmates share Plaintiff's concerns about dirty mop heads being washed with inmates' clothing.

---

[5]      Although Plaintiff's deposition includes a statement by the court reporter certifying that the transcript is accurate, the statement is not signed.

## II.    APPLICABLE LEGAL STANDARD

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on a plaintiff's complaint, such a motion is functionally the same as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment."  *Schwartz v. Compagnise General Transatlantique*, 405 F.2d 270, 273-74 (2d Cir. 1968) [citations omitted]; *accord*, *Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(c) motion for judgment on the pleadings] is proper with or without notice to the parties.").  Moreover, even where a defendant has not advanced such a failure-to-state-a-claim argument on a motion for summary judgment, a district court may, *sua sponte*, address whether a *pro se* prisoner has failed to state a claim upon which relief may be granted.[6]  For these reasons, it is appropriate to briefly summarize the recently clarified legal standard governing Federal Rule of Civil Procedure 12(c) motions for judgment on the pleadings.

The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim.  *Cleveland v. Caplaw Enter.*, 448 F.3d 518, 521 (2d Cir. 2006).  Under Federal Rule of Civil Procedure

---

[6]    The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis*] at any time if the court determines that . . . the action . . . is frivolous or malicious[,] . . . fails to state a claim on which relief may be granted[,] . . . or . . . seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall . . . dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . ."

12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Federal Rule of Civil  Procedure 8(a)(2);[7] or (2) a challenge to the legal cognizability of the claim.[8]

---

[7]　　　*See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[8]　　　*See  Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord, Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. By requiring this "showing," Rule 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."[9]  The main purpose of this rule is to "facilitate a proper decision on the merits."[10]  A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[11]

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading

---

[9]      *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz*, 534 U.S. at 512 [citation omitted]; *Leathernman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) [citation omitted].

[10]      *Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48); *see also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

[11]      *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion); *accord*, *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov. 30, 1998), *Flores v. Bessereau*, 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J.).  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See*, *e.g.*, *Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

requirements that exceed this liberal requirement.[12]  However, it is well established that even this liberal notice pleading standard "has its limits."[13]  As a result, several Supreme Court and Second Circuit decisions exist, holding that a pleading has failed to meet this liberal notice pleading standard.[14]

Most notably, in *Bell Atlantic Corporation v. Twombly*, the Supreme Court, in reversing an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

---

[12]    *See*, *e.g.*, *Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

[13]    2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).

[14]    *See*, *e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-1974 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement); *accord*, *Dura Pharm.*, 125 S. Ct. at 1634-1635, *Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-209 (2d Cir. 2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*. *See*, *e.g.*, *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

entitle him to relief." 127 S. Ct. 1955, 1968-69[15] (2007).[16]  Rather than turning on the

*conceivability* of an actionable claim, the Court clarified, the Rule 8 "fair notice" standard turns

on the *plausibility* of an actionable claim.  *Id*. at 1965-74.

More specifically, the Court reasoned that, by requiring that a pleading "show[] that the

pleader is entitled to relief," Rule 8(a)(2) requires that the pleading give the defendant "fair

notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests.  *Id*. at 1965,

n.3 [citation omitted].  While this does not mean that a pleading need "set out in detail the facts

upon which [the claim is based]," it does mean that the pleading must contain at least "some

factual allegation[s]."  *Id*. [citations omitted].  More specifically, the "[f]actual allegations must

be enough to raise a right to relief above the speculative level [to a plausible level]," assuming

(of course) that all the allegations in the complaint are true.  *Id*. at 1965 [citations omitted].  What

this means, on a practical level, is that there must be "plausible grounds to infer [actionable

conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will

reveal evidence of [actionable conduct]."  *Id*.

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified

plausibility standard that was articulated by the Supreme Court in *Bell Atlantic* governs *all*

claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Bell*

---

[15]     All citations to the *Bell Atlantic* decision will be to the S.Ct. cite rather than the
U.S. cite because page numbers are not available for the U.S. version.

[16]     The Court in *Bell Atlantic* further explained: "The phrase is best forgotten as an
incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately
stated, it may be supported by showing any set of facts consistent with the allegations in the
complaint. . . . *Conley*, then, described the breadth of opportunity to prove what an adequate
complaint claims, not the minimum standard of adequate pleading to govern a complaint's
survival." *Bell Atlantic*, 127 S. Ct. at 1969.

*Atlantic*).[17]   The Second Circuit has also recognized that this *plausibility* standard governs claims brought even by *pro se* litigants (although the plausibility of those claims is be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[18]

It should be emphasized that Rule 8's plausibly standard, explained in *Bell Atlantic*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2).   *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [citation omitted].   That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Bell Atlantic*–that a pleading need not "set out in detail the facts upon which [the claim is based]" in order to successfully state a claim.   *Bell Atlantic*, 127 S. Ct. 1965, n.3 (citing *Conley v. Gibson*, 355 U.S. 41, 47 [1957]).   That statement in no way meant

_____

[17]      *See, e.g., Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir. 2008) (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'") [citation omitted]; *Goldstein v. Pataki*, 07-CV-2537, 2008 U.S. App. LEXIS 2241, at *14 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that "*Twombly* requires . . . that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level . . . .'") [internal citation omitted]; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98, n.2 (2d Cir. 2007) ("We have declined to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (in prisoner civil rights action, stating, "[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly*] is . . . requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.") [emphasis in original].

[18]      *See*, *e.g.*, *Jacobs v. Mostow*, 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1]); *Boykin v. KeyCorp.*, 521 F.3d 202, 215-16 (2d Cir. 2008) (finding that borrower's *pro se* complaint sufficiently presented a "*plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

that all pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of the claim and the "grounds" on which the claim rests without ever having to allege any facts whatsoever.[19]  There must still be enough facts alleged to raise a right to relief above the speculative level to a plausible level, so that the defendant may know what the claims are and the grounds on which they rest (in order to shape a defense).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the

---

[19]     For example, in *Erickson*, a district court had dismissed a *pro se* prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to how the prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of approximately 18 months, the complaint (according to the district court) failed to allege facts plausibly suggesting that the termination caused the prisoner "substantial harm."  127 S. Ct. at 2199.  The Supreme Court vacated and remanded the case because (1) under Fed. R. Civ. P. 8 and *Bell Atlantic*, all that is required is "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was "endangering [his] life" and that he was "still in need of treatment for [the] disease."  *Id*. at 2200.  While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need.  The *Erickson* decision had to do with only the first element, not the second element.  *Id*. at 2199-2200.  In particular, the decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication.  *Id*.  This point of law is hardly a novel one.  For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e.g., Rose v. Alvees*, 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord*, 02-CV-1182, 2004 WL 526740, at *10 n.11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright*, 234 F. Supp.2d 352, 360 (S.D.N.Y. 2002); *McKenna v. Wright*, 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord*, 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

complaint as true and construe all reasonable inferences in the plaintiff's favor."[20]  "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."[21]  In other words, while all pleadings are to be construed liberally under Rule 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[22]  Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that

_____

[20]     *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[21]     *Hernandez*, 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) [citation omitted].

[22]     "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."  *Gadson v. Goord*, 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia*, *Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987] [considering plaintiff's response affidavit on motion to dismiss]).  Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'"  *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).  This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading–which a motion to dismiss is not.  *See Washington v. James*, 782 F.2d 1134, 1138-39 (2d Cir. 1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

they suggest."[23]  Furthermore, when addressing a *pro se* complaint, *generally* a district court

"should not dismiss without granting leave to amend at least once when a liberal reading of the

complaint gives any indication that a valid claim might be stated."[24]  Of course, an opportunity to

amend is not required where the plaintiff has already amended his complaint.[25]  In addition, an

opportunity to amend is not required where "the problem with [plaintiff's] causes of action is

substantive" such that "[b]etter pleading will not cure it."[26]

---

[23]     *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

[24]     *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) [internal quotation and citation omitted]; *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

[25]     *Yang v. New York City Trans. Auth.*, 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec ., Inc.*, 16 F.Supp. 2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

[26]     *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted]; *see, e.g.*, *See Rhodes v. Hoy*, 05-CV-0836, 2007 WL 1343649, at *3, 7 (N.D.N.Y. May 5, 2007) (Scullin, J., adopting Report-Recommendation of Peebles, M.J.) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the error in his complaint–the fact that plaintiff enjoyed no constitutional right of access to DOCS' established grievance process–was substantive and not formal in nature, rendering repleading futile); *Thabault v. Sorrell*, 07-CV-0166, 2008 WL 3582743, at *2 (D. Vt. Aug. 13, 2008) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the errors in his complaint–lack of subject-matter jurisdiction and lack of standing–were substantive and not formal in nature, rendering repleading futile); *Hylton v. All Island Cob Co.*, 05-CV-2355, 2005 WL 1541049, at *2 (E.D.N.Y. June 29, 2005) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the errors in his complaint–which included the fact that plaintiff alleged no violation of either the Constitution or laws of the United States, but only negligence–were substantive and not formal in nature, rendering repleading futile); *Sundwall v. Leuba*, 00-CV-1309, 2001 WL 58834, at *11 (D.

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit very recently observed),[27] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12.[28]  Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Rules 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[29]  Stated more plainly, when a plaintiff is proceeding *pro se*,

---

Conn. Jan. 23, 2001) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the error in his complaint–the fact that the defendants were protected from liability by Eleventh Amendment immunity–was substantive and not formal in nature, rendering repleading futile).

[27]     *Sealed Plaintiff v. Sealed Defendant # 1*, No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training . . . should not be impaired by harsh application of technical rules.") [citation omitted].

[28]     *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner*, 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed. R. Civ. P. 8]); *accord*, *Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir. 1996) (citing *Prezzi v. Schelter*, 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter*, 469 F.2d 691, within the Second Circuit]; *accord*, *Praseuth v. Werbe*, 99 F.3d 402 (2d Cir.1995).

[29]     *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . .  we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich*, 408 F.3d 124, 128, 130 (2d Cir. 2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply

20

"all normal rules of pleading are not absolutely suspended."[30]

## III.   ANALYSIS

### A.   Retaliation Claims Based on Comments, Threats, and Harassment

The complaint alleges that several Defendants retaliated against Plaintiff by verbally harassing him, making threats, and sexually harassing him.  Defendants argue that these allegations fail to state a claim.  (Dkt. No. 68-5 at 2-4.)

### 1.   Comments, Threats, and Verbal Harassment

The complaint describes four occasions on which various Defendants threatened Plaintiff. First, it alleges that on August 31, 2005, Defendant Theriault told Plaintiff "if you don't stop writing grievances on my officers, I will personally do you bodily harm."  (Dkt. No. 35 at ¶ 23.) Second, it alleges that on January 23, 2006, Defendant Theriault told Plaintiff that his "officer[s] will continue to target [Plaintiff] for the grievance [he] wrote because they are human beings." (Dkt. No. 35 at ¶ 29.)  Third, it alleges that on April 25, 2006, Defendant Ball "saw Plaintiff on the walk way ..., called him a trouble maker, verbally harassed him, and threated[ed] to put him in the SHU because of the civil action [Plaintiff] had filed against his colleagues."  (Dkt. No. 35 at ¶ 31.)  Fourth, it alleges that on April 26, 2006, Defendant Monnely[31] said "if you make any sudden moves I will thr[ow] you to the ground and stomp you out."  (Dkt. No. 35 at ¶ 33.)

---

with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading []or prejudice the adverse party").

[30]   *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980).

[31]   Defendants refer to this officer as "Marnell" in their memorandum of law (Dkt. No. 68-5 at 2-4), but refer to her in the answer to the complaint as "Monnely."  I have used the spelling listed in the complaint, the answer, and the docket.

I have construed the complaint as asserting retaliation claims against Defendants Theriault, Ball, and Monelly based on these allegations.  Defendants argue that these allegations fail to state a claim.  Specifically, Defendants argue that "[i]t is clear that claims of verbal harassment alone do not state a cause of action under § 1983."  (Dkt. No. 68-5 at 2.)

In order to state a cause of action for retaliation, a plaintiff must plead facts plausibly suggesting that (1) the plaintiff engaged in constitutionally protected speech or conduct; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action.  *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)).  Defendants argue, essentially, that Plaintiff has not pleaded facts sufficient to plausibly suggest that Defendants took adverse action.

> Under some circumstances, verbal threats may constitute adverse action, depending on their degree of specificity and the context in which they are uttered. *See, e.g., Hepworth v. Suffolk County*, No. 2:02-cv-6473, 2006 WL 2844408, at *8-9 (E.D.N.Y. Sept. 29, 2006) (denying summary judgment where "continued verbal threats" that inmate "would receive another beating or be killed" was sufficient "evidence ... such that a reasonable jury could find that the officers unconstitutionally retaliated against [inmate] ... for exercising his First Amendment" rights). Thus, vague intimations of some unspecified harm generally will not rise to the level of adverse action for the purpose of a First Amendment retaliation claim. *See, e.g., Bartley v. Collins*, No. 95 Civ. 10616, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) (stating that "verbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action") (citing *Dawes*, 239 F.3d at 493, for the proposition that "[n]ot every unnecessary statement of a prison guard regarding an inmate's exercise of free speech violates the First Amendment")*; Alicea v. Howell*, 387 F. Supp.2d 227, 237 (W.D.N.Y.2005) (defendant's "alleged statements to plaintiff about there being 'no secrets in prison' and that plaintiff would 'have to pay the consequences' for filing a grievance against [defendant] d[id] not give rise to a First Amendment retaliation claim"); *Cruz v. Hillman*, No. 01 Civ. 4169, 2002 WL 31045864, at *7 (S.D.N.Y. May 16, 2002)

(allegation that defendant made statement which "expressed his dislike for inmates who file civil lawsuits, and later came to plaintiff's cell and said 'Green Haven is an open battlefield, so be careful' " was insufficient to state retaliation claim).

*Bumpus v. Canfield*, 495 F. Supp. 2d 316, 326 (W.D.N.Y. 2007) (allegation that correctional officer "chastised" prisoner and said that he was "getting tired of" prisoner filing grievances insufficient to state a retaliation claim).

Here, viewed in context, Defendant Theriault's alleged threats were sufficiently specific that, if the facts alleged were proved by evidence, a reasonable jury could find that Defendant Theriault retaliated against Plaintiff.  The complaint alleges that on August 25, 2005, Plaintiff filed a grievance against Defendant Hunsky.  (Dkt. No. 35 at ¶ 23.)  Six days later, Defendant Theriault told Plaintiff that if he did not "stop writing grievances, I will personally do you bodily harm."  *Id*.  Plaintiff alleges that on that same day, Defendant Theriault did, in fact, attack him.  (Dkt. No. 35 at ¶ 25.)  In light of this history, Defendant Theriault's statement five months later that his "officers will continue to target [Plaintiff] for the grievances [he] wrote because they are human beings" (Dkt. No. 35 at ¶ 29) was neither vague nor unspecified.  Therefore, the complaint states a claim that Defendant Theriault's threats constituted retaliation and I recommend that Defendants' motion be denied as to this claim.

The complaint also states a cause of action for retaliation against Defendant Ball.  Defendant Ball's threat that he was going to put Plaintiff in the SHU was fairly specific.  Moreover, Plaintiff alleges that Defendant Ball did, indeed, put Plaintiff in the SHU the very next day.  (Dkt. No. 35 at ¶ 32.)  Accordingly, I find that the complaint alleges that Defendant Ball's threat was sufficiently specific in context to state a claim for retaliation and I recommend that

Defendants' motion be denied as to this claim.

Defendant Monnely's comment that "if you make any sudden moves I will thr[ow] you to the ground and stomp you out" (Dkt. No. 35 at ¶ 33) was made in the context of processing Plaintiff into the SHU.  Even liberally construed, the context of Defendant Monnely's comment does not plausibly suggest that it was sufficiently specific or related to constitutionally protected activity to state a claim for retaliation.  Therefore, I recommend that Plaintiff's claim regarding this comment be dismissed.

2.   <u>Sexual Harassment</u>

The complaint alleges that on April 26, 2006, while Plaintiff was being processed into the SHU, Defendant Monnely sexually harassed Plaintiff and fondled Plaintiff's anus.  (Dkt. No. 35 at ¶ 33.)  Defendants argue that Plaintiff has failed to state a claim against Defendant Monnely. (Dkt. No. 68-5 at 2-4.)  Defendants are correct.

Sexual abuse of a prisoner by a corrections officer may, in some circumstances, violate the prisoner's Eighth Amendment right to be free from cruel and unusual punishment.  For example, "severe or repetitive sexual abuse of an inmate by a prison officer" may be actionable under the Eighth Amendment, as may situations where "no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct."  *Boddie v. Schnieder*, 105 F.3d 857, 860-61 (2d Cir. 1997) (holding that allegation that correctional officer touched inmate's penis on one occasion and pressed against him sexually on another occasion, while "despicable,"  was insufficient to state Eighth Amendment claim).  *See also Morrison v. Cortright,* 397 F. Supp. 2d 424 (W.D.N.Y. 2005) (allegation that correctional officer shone light up inmate's anus, ran his middle finger between inmate's buttocks causing inmate to urinate on

24

himself, and rubbed his penis against inmate's buttocks during strip frisk insufficient to give rise

to constitutional claim); *Davis v. Castleberry*, 364 F. Supp. 2d 319, 321 (W.D.N.Y. 2005)

(allegation that correctional officer grabbed inmate's penis during pat frisk insufficient to state

constitutional claim); *Montero v. Crusie*, 153 F. Supp. 2d 368 (S.D.N.Y. 2001) (allegation that,

on several occasions, correctional officer squeezed inmate's genitalia while pat-frisking him did

not show sufficiently serious deprivation to establish Eighth Amendment violation, particularly

when inmate did not allege that he was physically injured by such conduct); *Williams v. Keane*,

No. 95 Civ. 0379, 1997 WL 527677, at *11 (S.D.N.Y. Aug. 25, 1997) (allegation that

correctional officer put his hand down inmate's pants and fondled inmates genitals during pat

frisk failed to state constitutional claim).

      The allegations here are virtually indistinguishable from the events described in *Boddie*.

Therefore, I recommend that the claim against Defendant Monnely be dismissed.

### B.      Conditions of Confinement Claim Regarding Dirty Mop Heads

      Plaintiff alleges that Defendants Coco and Sorell violated his constitutional rights by

washing dirty mop heads with inmates' laundry, thus causing him to suffer a skin rash.  (Dkt. No.

35 at ¶¶ 9, 18.)  I have construed the complaint as asserting an Eighth Amendment conditions of

confinement claim against Defendants Coco and Sorell.  Defendants argue that Plaintiff has

failed to state a constitutional claim or, in the alternative, that there is no triable issue of material

fact on this issue.  (Dkt. No. 68-5 at 4-5.)  As discussed above, due to the deficiencies in

Defendants' Statement of Material Facts and evidentiary submissions, I will address only

Defendants' argument that Plaintiff has failed to state a constitutional claim.

      Generally, to state a claim of inadequate prison conditions, a plaintiff must allege facts

plausibly suggesting two things: (1) that the conditions of his confinement resulted in deprivation that was *sufficiently serious* such that the prisoner was denied the minimal civilized measure of life's necessities; and (2) that the defendant acted with *deliberate indifference* to the plaintiff's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Trammell v. Keane,* 338 F.3d 155, 161 (2d Cir. 2003); *Davidson v. Murray*, 371 F. Supp.2d 361, 370 (W.D.N.Y. 2005).  There is not a static test for Eighth Amendment conditions of confinement claims: the conditions must be evaluated in light of contemporary standards of decency.  *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995) (*citing Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)).

Defendants argue, without citation to authority, that Plaintiff's allegations about his skin rash are not "sufficiently serious" to state an Eighth Amendment claim.  (Dkt. No. 68-5 at 4-5.)

 Prison officials are required to ensure that prisoners receive adequate clothing.  *Farmer*, 511 U.S. at 832.  The lack of clean clothing raises personal hygiene concerns that may implicate the Eighth Amendment*.  See Blissett*, 66 F.3d at 537 (*citing Maxwell v. Mason*, 668 F.2d 361, 363 (8th Cir. 1981) (unnecessary deprivation of adequate clothing and bedding violates Eighth Amendment); *Toussaint v. McCarthy*, 597 F. Supp. 1388, 1410-11 (N.D. Cal. 1984) (lack of laundry service for months violates Eighth Amendment), *aff'd in part, rev'd in part on other grounds*, 801 F.2d 1080 (9th Cir. 1986), *cert. denied*, 481 U.S. 1069 (1987).

Here, the complaint alleges that Plaintiff's primary care physician was sufficiently concerned about Plaintiff's "contact with pernicious chemicals" that he instructed that a memorandum be issued to all of the housing units at the facility instructing that dirty mop heads should not be washed in the same machines as inmates' clothes.  (Dkt. No. 35 at ¶¶ 5, 15.) Rather than heeding this advice, Defendant Sorell allowed porters to wash dirty mop heads in the

inmate washing machine.  (Dkt. No. 35 at ¶ 18.)  Liberally construed, the complaint states an

Eighth Amendment conditions of confinement claim based on the failure to provide adequate

clothing.  As discussed below, however, Defendants Coco and Sorell are entitled to qualified

immunity.

### C.    Retaliation Claims Based on False Misbehavior Reports

Plaintiff alleges that Defendants Sorell, Hunsky, McDonald, and Ball issued false

misbehavior reports.  (Dkt. No. 35 at ¶¶ 19, 23, 24, 30, 32.)  I have construed the complaint as

asserting retaliation claims against these Defendants.  Defendants argue that Plaintiff has failed

to state a claim or, in the alternative, has failed to raise a genuine issue of material fact.  (Dkt.

No. 68-5 at 5-11.)  As discussed above, due to the deficiencies in Defendants' Statement of

Material Facts and evidentiary submissions, I will address only Defendants' argument that

Plaintiff has failed to state a claim[32].

"[A] prison inmate has no general constitutional right to be free from being falsely

accused in a misbehavior report."  *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing

*Freeman v. Rideout*, 808 F.2d 949, 951 [2d Cir. 1986]); *accord*, *Pittman v. Forte*, 01-CV-0100,

2002 WL 31309183, *5 (N.D.N.Y. July 11, 2002) (Sharpe, M.J.).  In addition, "[t]he filing of a

false report does not, of itself, implicate the guard who filed it in constitutional violations which

occur at a subsequent disciplinary hearing."  *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986).

---

[32]    On the evidence, Defendants argue that they are entitled to summary judgment
because it is undisputed that Plaintiff committed the misconduct charged.  (Dkt. No. 68-5 at 9-
11.)  Defendants rely on *Hynes v. Squillace*, 143 F.3d 653 (2d Cir. 1998).  I note that *Hynes* is
distinguishable because in that case the prisoner conceded, both at his disciplinary hearing and in
his briefs before the district court, that he was guilty of the disciplinary charges.  *Hynes*, 143 F.3d
at 657.

The only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there has been more, such as "retaliation against the prisoner for exercising a constitutional right." *Boddie*, 105 F.3d at 862.

To state a claim for retaliation, a plaintiff must plead facts plausibly suggesting that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action--in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff.  *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d. Cir. 2001)).

"A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action."  *Espinal v. Goord*, 554 F.3d 216, 227 (2d Cir. 2009)(*citing Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) and *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001)).

The complaint states a retaliation claim against Defendant Hunsky regarding the August 31, 2005, misbehavior report.  Plaintiff alleges that he filed a grievance against Hunsky "for filing a fa[ls]e misbehavior report, dated 8/25/05[33]."  (Dkt. No. 35 at ¶ 23.)  Filing a grievance is a constitutionally protected activity. *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996).  Six days later, "[i]n retaliation for asserting my constitutional rights, Officer Hunsky fabricated a

---

[33]     To the extent that Plaintiff's complaint asserts a retaliation claim against Defendant Hunsky regarding the August 25, 2005, misbehavior report, I recommend that the claim be dismissed because the complaint does not assert facts plausibly suggesting a retaliatory motive.

second misbehavior report ... resulting in [Plaintiff] being sent to the SHU." (Dkt. No. 35 at ¶ 24.) Filing a false misbehavior report that results in a SHU sentence is an "adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004). Plaintiff's allegation that the adverse action took place six days after the protected activity plausibly suggests that there was a causal connection between the two events. Thus, the complaint alleges that Defendant Hunksy issued the second false misbehavior report in retaliation for Plaintiff's filing of a grievance regarding the first false misbehavior report. I therefore recommend that Defendants' motion be denied as to the retaliation claim against Defendant Hunsky arising from the August 31, 2005, misbehavior report without prejudice to the filing of a subsequent motion for summary judgment properly supported by a Statement of Material Facts and admissible evidence.

Defendants argue that Plaintiff "fails to make a showing in regard to McDonald." (Dkt. No. 68-5 at 5.) Defendants' argument hinges on evidence rather than on Plaintiff's complaint. (Dkt. No. 68-5 at 8-10.) Therefore, as discussed above, I will not address it due to the defects in Defendants' Statement of Material Facts and evidentiary submissions. Very liberally construed, the complaint states a claim against Defendant McDonald for retaliation. The complaint alleges that on January 23, 2006, Defendant Theriault told Plaintiff that his "officer[s] will continue to target [Plaintiff] for the grievance [he] wrote." (Dkt. No. 35 at ¶ 29.) Within the next week, Defendant McDonald issued two misbehavior reports to Plaintiff, which Plaintiff alleges were false. (Dkt. No. 35 at ¶ 30.) These facts plausibly suggest that Defendant McDonald took adverse action against Plaintiff for engaging in constitutionally protected activity. Therefore, I recommend that Defendants' motion be denied without prejudice to the filing of a subsequent motion for summary judgment properly supported by a Statement of Material Facts and

admissible evidence.

Defendants argue that the complaint does not allege that Sorell acted in retaliation.  (Dkt. No. 68-5 at 5.)  The complaint does conclusorily allege that Sorell acted in retaliation.  Paragraph 19 states: "Also *in retaliation* on 4/27/05 petitioner was given a Direct Officer to perform a work detail by correction officer Sorell.  Upon informing this officer that I have a medical excuse that prohibits me from this task.  This officer fabricated a false misbehavior report."  (Dkt. No. 35 at ¶ 19, emphasis added.)  The complaint further alleges that Defendant Sorell falsely testified at the subsequent disciplinary hearing and that this act, like all of the other acts alleged in the complaint, was "based on *retaliatory* actions against the plaintiff to dehumanize and discourage him from exercising his Constitutional Rights."   (Dkt. No. 35 at ¶¶ 20, 35, emphasis added. )  However, this conclusory allegation is not plausibly supported by any facts in the complaint.  The complaint alleges that Defendant Sorell washed mop heads with inmates' laundry and that two months later Defendant Sorell ordered Plaintiff to perform a work detail.  (Dkt. No. 35 at ¶¶ 18-19.)  It does *not* allege that Plaintiff filed any grievances against Defendant Sorell regarding the mop heads or complained about her actions to anyone.  Thus, the complaint does not allege that Defendant Sorell took adverse action in response to Plaintiff's exercise of his constitutional rights.  Therefore, I recommend that Defendants' motion be granted as to this claim.

Defendants argue that the complaint does not allege that Defendant Ball acted in retaliation.  (Dkt. No. 68-5 at 5.)  Defendants are correct that the paragraph describing Defendant Ball's behavior merely alleges that Defendant Ball "fabricated a misbehavior report and placed [Plaintiff] in the SHU" without alleging Defendant Ball had a retaliatory motive.  (Dkt. No. 35 at ¶ 32.)  However, as noted above, Paragraph 35 of the complaint alleges that all of the actions

described in the complaint were retaliatory.  (Dkt. No. 35 at ¶ 35.)  Moreover, as discussed above, the complaint includes facts plausibly suggesting that Defendant Ball retaliated against Plaintiff for constitutionally protected activity.  It alleges that Defendant Ball told Plaintiff that he planned to put Plaintiff in the SHU "because of the civil action [Plaintiff] had filed against his colleagues" and that he made good on this threat the very next day.  (Dkt. No. 35 at ¶ 31-32.) These facts plausibly suggest that Defendant Ball retaliated against Plaintiff.  Therefore, I recommend that Defendants' motion be denied as to this claim.

> ### D.    Eighth Amendment Medical Care Claims

Liberally construed, the complaint may be read as alleging that Defendants Coco, Sorell, and Plowman violated Plaintiff's Eighth Amendment right to adequate medical care.  To prevail on an Eighth Amendment claim of inadequate medical care, a plaintiff must show two things: (1) that the plaintiff had a *sufficiently serious* medical need; and (2) that the defendant was *deliberately indifferent* to that serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).  Defendants argue that Plaintiff has not alleged that he suffers from a serious medical need and that, even if he had, the complaint does not allege that Defendants were deliberately indifferent to that need.

To be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) [citations omitted], *accord*, *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996), *cert. denied*, 513 U.S. 1154 (1995); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)*.  Regarding the claims against Defendants Coco and Sorell arising from the washing of the mop heads with inmates' clothing,

although the complaint refers to Plaintiff's rash as "cancer-like" (Dkt. No. 35 at ¶ 10), the complaint is conspicuously devoid of any allegations that Plaintiff actually suffered pain or degeneration due to the rash.  Moreover, I have not found any federal cases, published or unpublished, classifying this type of rash as a serious medical condition.  As to the claim that Defendant Plowman removed medication from Plaintiff's personal property, the complaint does not specify what the medication was or why Plaintiff needed it.  Therefore, I find that Plaintiff has not alleged a condition that is "sufficiently serious" to state an Eighth Amendment claim of inadequate medical care.

Even if Plaintiff had alleged a "sufficiently serious" condition, I would find that he has not alleged that Defendants Coco, Sorell, and Plowman acted with deliberate indifference to that need.  For a complaint to adequately allege deliberate indifference, an inmate must plead facts plausibly suggesting that (1) a prison medical care provider was aware of facts from which the inference could be drawn the inmate had a serious medical need; and (2) that the medical-care provider actually drew that inference.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Chance*, 143 F.3d at 702-703. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need.  *Farmer*, 511 U.S. 825, 835; *Ross v. Giambruno*, 112 F.3d 505 (2d Cir. 1997). An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference."  *Estelle*, 429 U.S. at 105-06.  Moreover, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment."  *Id.*  Stated another way, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.; Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) ("Because the Eighth Amendment is

32

not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every

lapse in prison medical care will rise to the level of a constitutional violation.").

The complaint does not allege that Defendants Coco, Sorell, or Plowman were medical

care providers.  The complaint does not allege that they witnessed Plaintiff suffering from his

rash or any other condition and declined to summon medical personnel.  They were under no

duty to provide medical care to Plaintiff.  As discussed above, Plaintiff's claims against

Defendants Coco and Sorell regarding the washing of the mop heads are better stated as

conditions of confinement claims.  The allegations against Defendant Plowman regarding the

removal of Plaintiff's medication do not state any claim[34].  Therefore, I recommend that

Defendants' motion be granted as to Plaintiff's Eighth Amendment medical care claims.

### E.        Conclusory Allegations

Defendants argue that "the allegations regarding defendants are completely conclusory,

---

[34]        To the extent that Plaintiff asserts a Fourth Amendment claim against Defendant
Plowman arising from this incident, I find it to be without merit and recommend dismissal
pursuant to 28 U.S.C. § 1915(e)(2)(B).  The Fourth Amendment provides that "[t]he right of the
people to be secure in their persons . . . against unreasonable searches . . . shall not be violated."
U.S. Const. amend IV.  "What is reasonable, of course, depends on all of the circumstances
surrounding the search or seizure and the nature of the search or seizure itself."  *Skinner v. Ry.
Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989) [internal quotation marks and citation
omitted].  "Thus, the permissibility of a particular practice is judged by balancing its intrusion on
the individual's Fourth Amendment interests against its promotion of legitimate governmental
interests."  *Skinner*, 489 U.S. at 619 [internal quotation marks and citations omitted].  In so
doing, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is
conducted, the justification for initiating it, and the place in which it is conducted."  *Bell v.
Wolfish*, 441 U.S. 520, 559 (1979) [citations omitted], *accord*, *Covino v. Patrissi*, 967 F.2d 73,
77 (2d Cir. 1992).  The Fourth Amendment's proscription against unreasonable searches does not
apply *at all* within the confines of a prison cell.  *Hudson v. Palmer* 468 U.S. 517, 526 (1984); *see
also Tinsley v. Greene*, 95-CV-1765, 1997 WL 160124, at *7 (N.D.N.Y. March 31, 1997)
(Pooler, J., adopting Report-Recommendation of Homer, M.J.) ("Searches of prison cells, even
arbitrary searches, implicate no protected constitutional rights.").

and do not give defendants fair notice of plaintiff's claims."  (Dkt. No. 68-5 at 13.)  Defendants

do not specify which allegations they claim are too conclusory.

Defendants correctly note that "[t]he Second Circuit has repeatedly held that complaints

based on violations of constitutional rights must contain more than conclusory allegations to

avoid dismissal."  (Dkt. No. 68-5 at 13) (*citing Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir. 1990) and

*Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)).  Here, Plaintiff's complaint contains more

than conclusory allegations, to which Defendants have been able to respond.  Therefore, I

recommend that Defendants' motion be denied on this ground.

### F.      Personal Involvement by Defendant Taylor

Plaintiff alleges that "Superintendent Taylor had a memorandum from the Medical

Department that was posted removed ... that would have avoided the prolong[ed] practice of

washing dirty mop heads in the inmate[ ] washing machines."  (Dkt. No. 35 at ¶ 17.)  I have

construed the complaint as asserting an Eighth Amendment conditions of confinement claim

against Defendant Taylor.

Defendants argue that Plaintiff's "only allegation against defendant Taylor involve[s] the

assumption that, as the Superintendent, Taylor was somehow liable.  Plaintiff does not allege any

wrongdoing in connection with this act; nor does he allege this act in any way violated his

Constitutional rights[35]."  (Dkt. No. 68-5 at 14.)

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.

---

[35]      To the extent that Defendants' argument relies on Plaintiff's deposition testimony,
I decline to consider it due to the deficiencies in Defendants' Statement of Material Facts and
evidentiary submissions.

1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 [2d Cir. 1991]).[36]  In order to

prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show

some tangible connection between the alleged unlawful conduct and the defendant.[37]  If the

defendant is a supervisory official, such as a DOCS Commissioner or Deputy Commissioner, a

mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the

doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that

unlawful conduct.[38]  In other words, supervisory officials may not be held liable merely because

they held a position of authority.[39]  Rather, supervisory personnel may be considered "personally

involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation

after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or

custom under which the violation occurred, (4) had been grossly negligent in managing

subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of

inmates by failing to act on information indicating that the violation was occurring.[40]

  Here, as discussed above, the complaint states an Eighth Amendment conditions of

---

  [36] *Accord*, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978); *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987).

  [37] *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

  [38] *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

  [39] *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

  [40] *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (adding fifth prong); *Wright*, 21 F.3d at 501 (adding fifth prong); *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986) (setting forth four prongs).

confinement claim based on Plaintiff's allegation that he developed a rash because dirty mop heads were washed with his clothes.  Construed liberally, the complaint alleges that Defendant Taylor personally participated in that violation by removing notices posted at the direction of Plaintiff's primary care physician warning about the dangers of washing dirty mop heads with inmates' clothing.  Therefore, I find that the complaint sufficiently alleges personal involvement by Defendant Taylor and I recommend that Defendants' motion be denied without prejudice to the filing of a subsequent motion for summary judgment properly supported by a Statement of Material Facts and admissible evidence[41].

### G.   Eighth Amendment Excessive Force Claims

The complaint alleges that Defendants Plowman, Shareldon, and Theriault physically assaulted Plaintiff.  (Dkt. No. 35 at ¶¶ 14, 25.)  I have construed the complaint as asserting an Eighth Amendment excessive force claim against these Defendants.  Defendants argue that Plaintiff has failed to state an Eighth Amendment excessive force claim against these officers because "taking [P]laintiff's allegations as true for purposes of this motion only, [P]laintiff has failed to allege anything more than a *de minimus* use of force[42]."  (Dkt. No. 68-5 at 17.)

An Eighth Amendment claim of excessive force "has two components-one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect."  *Sims v. Artuz,* 230 F.3d 14, 20 (2d Cir. 2000) (*citing Hudson v. McMillian,*

---

[41]     Plaintiff's opposition to Defendants' motion appears to assert that Defendant Taylor was personally involved because he responded to Plaintiff's grievances.  Those allegations do not appear in the complaint, and I decline to address them at this time.

[42]     To the extent that Defendants' argument relies on Plaintiff's deposition testimony, I decline to consider it in light of the deficiencies in Defendants' Statement of Material Facts and evidentiary submissions.

503 U.S. 1, 7-8 (1992) and *Blyden v. Mancusi,* 186 F.3d 252, 262 (2d Cir.1999)).

Defendants argue, essentially, that Plaintiff has not pleaded sufficient facts to plausibly establish the objective element.  "[T]here are significant differences between the harm that must be shown to support a claim based on prison conditions and the harm that will suffice to support a claimed use of excessive force. To prevail on a claim based on the conditions of his confinement, a prisoner must show 'extreme deprivations,' ... However, no such showing of extreme injury is required when the claim is that prison officials used excessive force." *Sims*, 230 F.3d 14 at 21.

Here, Plaintiff has pleaded harm arising from the November 6, 2004, attack by Defendant Plowman and the November 9, 2004, attack by Defendant Shareldon.  Plaintiff alleges that each of these incidents "further infuriated" his "serious back problem."  (Dkt. No. 35 at ¶ 41.) Therefore, Plaintiff has pleaded the objective element as to the November 2004 attacks by Defendants Plowman and Shareldon.

Plaintiff has not pleaded the objective element as to Defendants Theriault and Shareldon regarding the August 31, 2005, attack.  Nowhere in the complaint does Plaintiff allege that he was harmed by this incident.  Therefore, I recommend that Defendants' motion be granted and that Plaintiff's Eighth Amendment excessive force claims against Defendants Theriault and Shareldon arising from the August 31, 2005, incident be dismissed.

Plaintiff has not sufficiently pleaded the subjective element as to any of the defendants. "The subjective component of the claim requires a showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness' " in light of the particular

circumstances surrounding the challenged conduct." *Sims,* 230 F.3d at 20. "[W]hether conduct was "wanton" turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (*citing Hudson,* 503 U.S. at 7). Plaintiff does not even cursorily allege that Defendants Plowman or Shareldon acted wantonly. Absent from the complaint are any facts plausibly suggesting that Defendants Plowman and Shareldon acted wantonly. Rather, the complaint simply alleges that these Defendants "physically assaulted" Plaintiff. (Dkt. No. 35 at ¶ 14.) Therefore, I recommend that Defendants' motion be granted and that Plaintiff's Eighth Amendment claims against Defendants Plowman and Shareldon arising from the November 2004 incidents be dismissed.

### H.    Qualified Immunity

Defendants argue that they are entitled to qualified immunity. Defendants argue that they did not violate any clearly established constitutional rights because "none of [P]laintiff's allegations, even if true, rise to the level of Constitutional violations." (Dkt. No. 68-5 at 20.) Even if there were constitutional violations, Defendants argue, "it would not have been clear to a reasonable person that the actions by defendants as alleged by plaintiff violated plaintiff's Constitutional rights. No reasonable person in defendants' shoes would have thought those actions violated any clearly established right of the plaintiff." (Dkt. No. 68-5 at 20-21.) Defendants do not break down their qualified immunity argument by defendant or cause of action. Other than a statement of law, these quotes comprise the entirety of Defendants' qualified immunity argument.

I will discuss the application of the doctrine of qualified immunity to the following claims, which I have found sufficient to withstand Defendants' arguments on the constitutional

merits: (1) the Eighth Amendment conditions of confinement claim against Defendant Coco arising from the washing of inmates' clothing with dirty mop heads; (2) the Eighth Amendment conditions of confinement claim against Defendant Taylor for removing the memoranda from Plaintiff's physician; (3) the Eighth Amendment conditions of confinement claim against Defendant Sorell arising from the washing of inmates' clothing with dirty mop heads; (4) the retaliation claim against Defendant Hunsky arising from the August 31, 2005, misbehavior report; (5) the retaliation claims against Defendant Theriault arising from the August 31, 2005, and January 23, 2006, threats; (6) the retaliation claims against Defendant McDonald arising from the January 2006 misbehavior reports; (7) the retaliation claim against Defendant Ball arising from the April 25, 2006, threat; and (8) the retaliation claim against Defendant Ball arising from the April 26, 2006, misbehavior report.

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Williams v. Smith*, 781 F.2d 319, 322 (2d Cir. 1986) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 [1982]).  As a result, a qualified immunity inquiry in a prisoner civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff, establish a constitutional violation"; and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted."  *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004) [citations omitted], *accord*, *Higazy v. Templeton*, 505 F.3d 161, 169, n.8 (2d Cir. 2007) [citations omitted].  Courts may exercise their sound discretion in deciding which of the two prongs should be addressed first, in light of the circumstances in the particular case at hand.

*Pearson v. Callahan*, 129 S.Ct. 808, 817 (2009).

In determining the second issue (i.e., whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) [citations omitted], *cert. denied*, 503 U.S. 962 (1992).[43] "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton*, 505 F.3d 161, 169-70 (2d Cir. 2007) [citations omitted].[44] This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]."

---

[43]     *See also Pena v. DePrisco*, 432 F.3d 98, 115 (2d Cir. 2005); *Clue v. Johnson*, 179 F.3d 57, 61 (2d Cir. 1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir. 1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir. 1996); *Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d Cir. 1995); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994); *Calhoun v. New York State Division of Parole*, 999 F.2d 647, 654 (2d Cir. 1993).

[44]     *See also Anderson v. Creighton*, 483 U.S. 635, 639 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.'") [citation omitted]; *Davis v. Scherer*, 468 U.S. 183, 190 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir. 1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

*Malley v. Briggs*, 475 U.S. 335, 341 (1986).[45]

I find that Defendants Coco and Sorell are entitled to qualified immunity against the Eighth Amendment conditions of confinement claims arising from the washing of inmates' clothing with dirty mop heads.  As discussed above, the facts, viewed in the light most favorable to Plaintiff, state an Eighth Amendment conditions of confinement claim.  However, this right was not defined with sufficient specificity that a reasonable officer, upon washing mop heads with inmate clothing, would have understood that his or her actions violated inmates' constitutional rights.  Therefore, I recommend that Defendants' motion be granted as to these claims.

As to the remaining claims, I find that Defendants are not entitled to qualified immunity because the facts viewed in the light most favorable to Plaintiff state constitutional claims, the rights in question were defined with 'reasonable specificity', the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question, and  under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 68) be **GRANTED IN PART** and **DENIED IN PART**.

**RECOMMENDED** that Defendants' motion be **granted** as to the following claims: (1) all claims against Defendant Monnely; (2) the retaliation claim against Defendant Hunsky arising

---

[45]     *See also Malsh v. Correctional Officer Austin*, 901 F. Supp. 757, 764 (S.D.N.Y. 1995) [citing cases]; *Ramirez v. Holmes*, 921 F. Supp. 204, 211 (S.D.N.Y. 1996).

from the August 25, 2005, misbehavior report; (3) the retaliation claim against Defendant Sorell arising from the April 2005 misbehavior report and disciplinary hearing testimony; (4) the Eighth Amendment medical care claims against Defendants Coco, Sorell, and Plowman; (5) the Eighth Amendment excessive force claims against Defendants Plowman, Shareldon, and Theriault; and (6) the Eighth Amendment conditions of confinement claims against Defendants Coco and Sorell arising from the washing of dirty mop heads with inmates' clothing.

**RECOMMENDED** that Defendants' motion be **denied** as to the following claims without prejudice to the filing of a subsequent motion for summary judgment properly supported by a Statement of Material Facts and admissible evidence: (1) the retaliation claim against Defendant Theriault arising from the August 31, 2005, threat; (2) the retaliation claim against Defendant Theriault arising from the January 23, 2006, threat; (3) the retaliation claim against Defendant Ball arising from the April 25, 2006, threat; (4) the retaliation claim against Defendant Hunsky arising from the August 31, 2005, misbehavior report; (5) the retaliation claims against Defendant McDonald arising from the January 2006 misbehavior reports; (6) the retaliation claim against Defendant Ball arising from the April 26, 2006, misbehavior report; and (7) the Eighth Amendment conditions of confinement claim against Defendant Taylor.

**RECOMMENDED** that the Court *sua sponte* dismiss: (1) any Fourth Amendment claim against Defendant Plowman arising from his removal of Plaintiff's medication from Plaintiff's personal property; (2) any retaliation claim against Defendant Coco arising from his transfer of Plaintiff to another dormitory; and (3) any Eighth Amendment medical care claim against Defendant Sorell arising from the April 2005 misbehavior report.

**RECOMMENDED** that the Court find that the complaint asserts the following claims,

42

which Defendants have not addressed and which are sufficiently well pleaded to withstand *sua sponte* review: (1) a retaliation claim against Defendant Plowman arising from the November 6, 2004, physical attack; (2) a retaliation claim against Defendant Shareldon arising from the November 9, 2004, physical attack; (3) retaliation claims against Defendants Theriault and Shareldon arising from the August 31, 2005, physical attack; and (4) a retaliation claim against Defendant Plowman arising from the removal of Plaintiff's medication from his personal property on September 3, 2005.

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day)**.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed. R. Civ. P. 6(a)(2), (d).

**BE ADVISED that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance.**[46]

---

[46]     *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n.3 (2d Cir. 1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans*, 88-CV-5309, 1993 WL 427409, at *18 n.8 (S.D.N.Y. Sept. 30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; s*ee also Murr v. U.S.*, 200 F.3d 895, 902, n.1 (6th Cir. 2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley*, 28 F.3d 532, 535

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of H.H.S.*, 892 F.2d 15 [2d Cir. 1989]).

Dated: March 25, 2009
      Syracuse, New York

                                    _George H. Lowe_
                                    George H. Lowe
                                    United States Magistrate Judge

---

(5th Cir. 1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] . . . Respondent has waived procedural default . . . objection[].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638-39 (9th Cir. 1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].